UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELISSA VONIQUE PRESTON, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner, Social <br> Security Administration,[1] <br><br> Defendant. | CIVIL ACTION <br> NO. 15-722-WGY |

YOUNG, D.J.[2]                                          June 5, 2017

**MEMORANDUM & ORDER**

## I.   INTRODUCTION

Melissa Preston ("Preston") brings this action pursuant to 42 U.S.C. § 405(g). Compl. ¶ 1, ECF No. 1. She challenges the decision of the Commissioner of Social Security (the "Commissioner") to deny Preston's application for Social Security disability benefits, arguing that the decision has legal error and does not have substantial support in the record.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration, and thus is substituted for Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

[2] Of the District of Massachusetts, sitting by designation. Reassignment Order, ECF No. 13.

Compl. ¶¶ 1, 13-14. The Commissioner argues that her decision has substantial support and ought be affirmed. Def.'s Br. Pursuant Gen. Order. No. 18. ("Def.'s Mem.") 1, ECF No. 11. Upon review of the record, this Court concludes that the hearing officer did not properly explain the weight accorded to a treating physician's opinion. Accordingly, this Court remands to the hearing officer for reevaluation of the weight to accord that medical evidence.

**A.   Procedural Background**

On March 26, 2012, Preston applied for disability and disability insurance benefits, as well as supplemental security income. Admin. R. 22, ECF No. 7-2.[3] Preston's applications were denied and she timely requested a hearing. Id. at 18-19. After a video hearing on November 11, 2013, the hearing officer[4] denied Preston's application. Id. at 22, 31.

Preston subsequently appealed to the Appeals Council of the Social Security Administration; her appeal was denied. Id. at 1. Preston then sought judicial review of the hearing officer's

---

[3] The administrative record spans multiple docket entries, labeled ECF Nos. 7-1 through 7-8. For the sake of simplicity, this Court cites page numbers in the continuously paginated record as a whole, omitting reference to particular ECF numbers.

[4] For an explanation of the Court's use of the term "hearing officer," see Vega v. Colvin, 164 F. Supp. 3d 249, 251 n.1 (D. Mass. 2016).

decision in this Court, Compl. ¶ 1, eventually filing a motion for judgment on the pleadings, Mot. J. Pleadings, ECF No. 9. Both parties briefed the issues. Mem. Law Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem."), ECF No. 10; Def.'s Mem. On January 31, 2017, this Court heard oral arguments[5] from both parties and took the matter under advisement. Jan. 31, 2017 Minute Entry.

### B. Factual Background

Preston is an unemployed, 32-year-old woman. Admin. R. 50, 194. She has a 10th grade education and work experience as a deli assistant and home health aide. Id. at 47, 50. She is unmarried and lives with her two young children. Id. at 45, 50.

Preston reports that back pain requires her to be sedentary most of the day. Id. at 47, 275. She independently performs activities such as shopping, driving, going to church, light cooking, and laundry. Id. at 55-56, 275-79. She also uses a computer to update her Facebook page. Id. at 53. Preston receives some assistance from her mother, sister, and boyfriend, especially in helping care for the children. Id. at 54-5.

---

[5] This Court has commenced giving oral hearings in Social Security cases. See Mauro King v. Berryhill, No. 15-00285-WGY, 2017 WL 1753442, at *1 n.5 (N.D.N.Y. Apr. 14, 2017), for an explanation of this change.

### 1. Back Pain and Scoliosis

As a child, Preston suffered from scoliosis and had metal rods permanently installed in her spine. Id. at 48-49, 370. She continues to suffer from scoliosis, as revealed by MRIs of her lower spine. See, e.g., id. at 378. Some MRI reports, however, reveal only "mild" spinal disfigurement. See, e.g., id. at 378, 381, 409.

Preston's treating physician, Dr. George Jobson ("Dr. Jobson"), treated Preston over a number of years. On July 17, 2008, Preston first consulted Dr. Jobson regarding severe, chronic back pain. Id. at 370. This pain continued through 2009 and prevented Preston from working. Id. at 371. From 2010 to 2012, Preston continued to see Dr. Jobson for pain management. Id. Dr. Jobson referred Preston to various specialists for further diagnosis and treatment. See, e.g., id. at 407, 410, 428, 564.

On January 23, 2012, Dr. Jobson wrote a letter opining that Preston [wa]s "permanently disabled" and "[could ]not work in any capacity." Id. at 426. That same day, Dr. Jobson completed a New York state disability assessment form on Preston's behalf. Id. at 424-25. He wrote that Preston could not lift, pull, or push any object weighing over 20 pounds and could not stand for over 20 minutes. Id. at 425.

On January 31, 2012, Dr. Jobson opined that Preston suffered from "Scoliosis," "Keratoconus," "compressed nerves in the back/spine," and "Fibromyalgia." Id. at 427. Consequently, he stated Preston "w[ould] be unable to work for at least one year. She ha[d] been unable to work since 7/1/08." Id.

Dr. Jobson completed another disability report for Preston on April 20, 2012. Id. at 441-46. In this report, Dr. Jobson opined that Preston had the capacity to sit for up to four hours and to stand for up to one hour, per eight hour day. Id. at 443. He also stated that Preston occasionally could lift or carry up to ten pounds. Id. at 444.

Dr. Jobson wrote another report on May 29, 2012. Id. at 501-08. He opined that Preston had no limitation in sitting and could stand for up to two hours per day. Id. at 505. Dr. Jobson also stated that Preston occasionally could lift up to 20 pounds. Id. at 504.

On October 8, 2013, Dr. Jobson wrote a letter stating that Preston could sit for up to four hours and stand for up to one hour per work day. Id. at 587. The same letter indicates that Preston occasionally could lift or carry up to ten pounds. Id.

At appointments with other specialists, Preston appeared to be in little to no pain. Id. at 535, 571. Indeed, one specialist indicated pain medication helped Preston, as "she [wa]s definitely feeling better . . . She [was] not having a

[5]

lot of pain." Id. At other points in the record Preston indicated that her pain was mitigated by medications and physical therapy. Id. at 402. Additionally, Preston self-assessed her limitations -- she said she was unable to lift more than 20 pounds, could not stand longer than 30 minutes, and could not sit more than 30 minutes. Id. at 279-81.

On July 12, 2012, Dr. Jose Corvalan ("Dr. Corvalan") completed an orthopedic examination of Preston. Id. at 523-26. Dr. Corvalan found that while Preston suffered from some pain, she walked with a normal gait, exhibited only mild reductions in strength, possessed only minor restrictions in range of motion, and presented little back tenderness. Id.

### 2. Depression and Anxiety

Preston reports experiencing anxiety and depression. Admin. R. 66-67. Preston says she has experienced these symptoms for two years, but she has not sought treatment. Id. at 67-68. Indeed, while Preston's social worker recommended that Preston see a counselor, Preston never followed up on that advice. Id. at 532.

The medical record provides an inconsistent portrayal of Preston's mental health. For example, in an orthopedic report dated February 28, 2011, Dr. Richard Dentico noted that Preston said she experienced some stress, but denied symptoms of anxiety

and depression. Id. at 408. He also wrote that Preston presented with normal affect. Id.

Furthermore, Dr. Anne Skamai ("Dr. Skamai") conducted a consultative psychological evaluation on August 1, 2012. Id. at 527-31. During Dr. Skamai's evaluation, Preston reported symptoms of depression, but not anxiety. Id. at 528. In spite of Preston's self-described symptoms, Dr. Skamai's report suggests Preston was euthymic and did not display depressive affect. Id. at 530. Dr. Skamai opined that Preston could follow instructions, perform complex tasks with supervision, make decisions, and relate appropriately with others. Id. at 531. Dr. Skamai did note, however, that Preston experiences some difficulty concentrating and maintaining a regular schedule. Id. The report concluded: "[t]he results of the examination appear to be consistent with psychiatric and stress-related problems, but in itself this does not appear to be significant enough to interfere with the claimant's ability to function on a regular basis." Id. Dr. Skamai recommended Preston seek treatment for her alleged depressive symptoms. Id. 532. Preston still had not, however, as of the November 11, 2013 hearing. Id. at 67.

## II. LEGAL STANDARD

A court reviews the Commissioner's decision to ensure that it has no legal error and that substantial evidence supports it.

[7]

42 U.S.C § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks and citations omitted). If there is substantial evidence and no legal error, a court must uphold the Commissioner's determination. 42 U.S.C. § 405(g).

Disability claims are assessed using a familiar five-step analysis that need not be re-detailed here. 20 C.F.R. §§ 404.1520, 416.920; see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). Pertinent to this Court's analysis are steps two, four, and five. At step two, the hearing officer must determine whether a claimant suffers from any "severe impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Prior to step four, the hearing officer assesses the claimant's residual functional capacity ("RFC"), which he or she then uses to determine if the claimant can still perform either her past work, or any other type of work available in the American economy. Id. §§ 404.1520(a)(4), 416.920(a)(4); see also Rosa, 168 F.3d at 77.

### III. ANALYSIS

#### A. Back Pain and Failure to Re-Contact

Preston argues that the hearing officer was required to re-contact Dr. Jobson to clarify inconsistencies with other medical

[8]

evidence, and that the failure to do so necessitates remand. 1/31/2017 Tr. 2:4-11 (citing Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008)). Further, Preston argues that the hearing officer's decision was deficient because it did not assess the required analytic factors when discounting the treating physician's opinion. Id. at 2:12-23. This Court holds that the hearing officer did not err by not re-contacting Dr. Jobson, but did err by failing to analyze the factors used to determine the weight to accord Dr. Jobson's opinion.

The hearing officer did not accord Dr. Jobson's opinion controlling weight, despite Dr. Jobson being Preston's treating physician. Admin. R. 29. The hearing officer found Dr. Jobson's opinions to be internally inconsistent, i.e., Preston's ability to stand for periods of time and the maximum weight she could lift continually oscillated. Id. Additionally, the hearing officer found Dr. Jobson's opinion conflicted with much of the medical evidence on the record, which purportedly revealed a lower level of disability than that which Dr. Jobson determined. Id.

In particular, the hearing officer noted substantial differences between Dr. Jobson's report and Dr. Corvalan's consultative examination,[6] id. at 28, which assessed only mild

---

[6] Recent scholarship suggests "that the medical consultants used at the initial disability determination process lack the

[9]

limitations. Id. at 524-26. Additionally, the hearing officer noted the inconsistencies between Preston's and Dr. Jobson's accounts of Preston's limitations. Id. at 28. The hearing officer noted that Preston's daily activities, such as cooking and shopping, do not indicate a severe level of impairment. Id. He emphasized that Dr. Jobson's assessment of Preston's strength and capacity to stand and sit differ significantly from Preston's description of her own abilities. Id. at 28-29. Because of these discrepancies, the hearing officer gave no weight to Dr. Jobson's opinion. Id. at 29. Based on the remaining evidence in the record, the hearing officer determined that Preston retained the RFC for sedentary work, despite her back ailments. Id. at 30.

Certainly, Dr. Jobson's opinions were internally inconsistent. Compare id. at 425, with id. at 443-44, 504-05, 587. The issue is thus whether those inconsistencies triggered a requirement that the hearing officer re-contact Dr. Jobson.

---

necessary, specialized medical knowledge to adequately and quickly process the increasing number of SSI and SSDI applications each year." Clare J. Horan, The Importance of Specialist Medical Consultants in the SSA Disability Determination Process: Analysis and Proposals, 102 Iowa L. Rev. 1361, 1361 (2017). The Social Security Administration "both fails to acknowledge the importance of having qualified and specialized medical consultants at the initial determination level and enacts new regulations and guidelines that actively exacerbate inaccuracy and the appearance of arbitrariness among the public." Id. at 1396. Fortunately, these concerns are not present in this case.

Under 20 C.F.R. § 404.1520b(b)-(c) (2012), such re-contact is discretionary. Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013). Thus, contrary to Preston's assertion, 1/31/2017 Tr. 2:7-9, a per se failure to re-contact the treating physician is not legal error because such re-contact is not mandatory. Lowry v. Astrue, 474 F. App'x 801, 804-05 (2d Cir. 2012).

The Social Security Administration, however, suggests there is an expectation -- even if not an obligation -- that a hearing officer will re-contact a treating physician to clarify ambiguities and inconsistencies. 20 C.F.R. § 404.1520b(b)(2). Moreover, the Second Circuit requires re-contact if the physician's report is "vague." Selian, 708 F.3d at 421. Other district courts in this Circuit have extended that rule so as to require re-contact if there are inconsistencies in the record. E.g., Ashley v. Commissioner of Soc. Sec., No. 5:15-CV-00040, 2014 U.S. Dist. LEXIS 178560, *7-8 (N.D.N.Y. Dec. 30, 2014) (Mcavoy, J.); Rolan v. Commissioner of Soc. Sec., 994 F. Supp. 2d 496, 504 (N.D.N.Y 2014) (Nathan, J.) ("Failure to seek any clarification of the perceived inconsistencies in [the treating physician's] findings about the claimant's marked and other limitations was legal error."). The Second Circuit, however, has not opined on this extension to the rule.

A decision by one district court is not binding upon another district court. Camreta v. Green, 563 U.S. 692, 709 n.7

[11]

(2011). This Court must follow binding precedent from the Second Circuit. United States ex rel. Schnitzler v. Follette, 406 F.2d 319, 322 (2d Cir. 1969). According to the Second Circuit, re-contact is discretionary if the hearing officer possessed a sufficiently complete record. Lowry, 474 F.App'x at 804 n.2. In such a circumstance, it is not legal error for the hearing officer not to re-contact the treating physician, even if the treating physician's records are self-contradictory. Id.

The hearing officer in this case possessed a sufficiently complete record. The medical evidence included specialists' reports, e.g., Admin. R. 418, 428, and readings from various MRIs, e.g., id. at 353, 437. Additionally, a detailed report from Dr. Corvalan is on the record. Id. at 523-26. The need for re-contact is thus obviated. Lowry, 474 F.App'x at 805 n.2.

Although the hearing officer was not obligated to place controlling weight on Dr. Jobson's reports, the hearing officer *was* obligated to specify the weight given to Dr. Jobson's opinion and the reasons for such weight. 20 C.F.R. § 404.1527(c)(2)-(6). In describing that rationale, the hearing officer must make reference to the various factors described in the rule. Id. Failure to discuss those factors is legal error warranting remand. Burgess, 537 F.3d at 129. Here, the hearing officer summarily determined to give Dr. Jobson's opinion no weight, but did not include an analysis of the mandated factors.

Admin. R. 29. In failing to discuss these factors when determining the weight to accord Dr. Jobson, the hearing officer committed legal error warranting remand. See Burgess, 537 F.3d at 129.

**B.    Mental Health Disability**

Preston argues that the hearing officer erred in finding that Preston's mental health problems were not severe. Pl.'s Mem. 18-19. She places special weight on Dr. Skamai's determination that Preston experiences some difficulty concentrating and maintaining a schedule, and argues the hearing officer did not adequately weigh that determination in his decision. Id. at 19. The government suggests that the hearing officer's determination is well-supported by the record, including Dr. Skamai's report and Preston's own description of her abilities. Def.'s Mem. 6-7. There is substantial evidence in the record to support the hearing officer's decision.

The hearing officer found that Preston's mental health problems were not severe and did not constitute a disability. Admin. R. 25. This decision was premised on "paragraph B" criteria for evaluating a mental disorder impairment, as set out in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. These criteria evaluate four functional domains: (i) daily living, (ii) social functioning, (iii) concentration, and (iv) decompensation. Id. (citing 20 C.F.R. pt. 404, subpt. P,

app. 1). With regard to daily living, the hearing officer found that Preston could care for herself, as evidenced by her ability to cook, clean, and do laundry. Id. With regard to social functioning, Preston maintains social relationships with her mother and sister, is in a romantic relationship, goes to church, and communicates on Facebook. Id. Pertaining to concentration and pace, Preston drives a car, uses a computer, cares for her children, and is able to pay her own bills. Id. Finally, the hearing officer found that there is no evidence of decompensation, as Preston has not been hospitalized for her symptoms. Id. at 25-26. Accordingly, the hearing officer found no evidence of disability on the basis of Preston's depression and anxiety. Id. at 26.

Several also doctors noted that Preston's presentation and affect did not support her allegations of depression. Id. at 408, 529-32. Notably, the evaluating psychologist, Dr. Skamai, reported Preston was euthymic. Id. at 530. Further, Dr. Skamai suggested that Preston retained the ability to perform complex tasks, relate to others, and follow instructions. Id. at 531. Preston's own account of her activities supports that assessment: she cooks, cleans, shops, drives, and goes to church. Id. at 55-56. As such, it appears Preston's depression does not severely impair her functioning, as is required to pass the step two analysis. Rosa, 168 F.3d at 77. Finally, Preston

[14]

has failed to seek treatment for her depression, despite recommendations that she do so. Admin. R. 67, 527, 532. It thus appears that Preston assesses her own symptoms as not being severe enough to require counseling -- a fact that strongly undermines any argument that the symptoms are so severe as to be disabling.

Preston alleges that the hearing officer discounted Dr. Skamai's determination that Preston experiences difficulty concentrating and following a schedule. Pl.'s Mem. 19. Yet, it is Preston who discounts the findings of the psychologist. Even in light of the difficulties Dr. Skamai reported, Dr. Skamai concluded that Preston's problems "[do] not appear to be significant enough to interfere with [her] ability to function on a regular basis." Admin. R. 531. Skamai's conclusions are based on the evaluation as a whole. By contrast, Preston seeks to cherry-pick one element of that evaluation to undermine the evaluation's conclusion -- despite that element being factored into the overall conclusion. Pl.'s Mem. 19; see also Admin. R. 531. Such an argument is unconvincing.

There is substantial evidence on the record in support of the hearing officer's decision pertaining to depression and anxiety. This Court affirms the hearing officer's decision that Preston's mental health issues are not severe impairments.

## IV. CONCLUSION

This Court GRANTS in part Plaintiff's Motion for Judgment on the Pleadings, ECF No. 9, remanding this case to the hearing officer solely for re-assessment of whether Dr. Jobson's recommendations ought be granted controlling weight. If less than controlling weight is merited, the hearing officer must clearly state the reasons why and indicate the weight Dr. Jobson's opinion will be afforded in the resulting decision. The hearing officer's analysis must include an explicit discussion of the weighting factors described in 20 C.F.R. § 404.1527(c)(2)-(6).

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
U.S. DISTRICT JUDGE